James H. Berry, Jr. (State Bar No. 075834)
Kevin R. Lussier (State Bar No. 143821)
BERRY & LUSSIER
A Professional Corporation
1901 Avenue of the Stars, Suite 1060
Los Angeles, California 90067-6064
Telephone: (310) 557-8989
Facsimile:  (310) 788-0080
E-Mail: jberry@bandlpc.com
E-Mail: klussier@bandlpc.com

Attorneys for Plaintiff CHANEL, INC.

# THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHANEL, INC., a New York corporation,<br><br>Plaintiff,<br><br>v.<br><br>THE UNINCORPORATED ASSOCIATION d/b/a LUXEVOUTE.COM d/b/a ETUIMAISON.COM, and DOES 1-10,<br><br>Defendants. | Case No. 2:11-cv-03780-GAF -PJW<br><br>[~~PROPOSED~~] **PRELIMINARY INJUNCTION** |

THIS CAUSE came before the Court upon Plaintiff's *Ex Parte* Application for Entry of Temporary Restraining Order, Order Restraining Transfer of Assets Tied to the Counterfeiting Operation, and Order to Show Cause Why a Preliminary Injunction Should Not Issue (the "Application for Preliminary Injunction") (Docket No. 18), and upon the Show Cause Hearing held on August 12, 2011. The Court has carefully reviewed the Application, the entire court file and is otherwise fully advised in the premises.

- 1 -
[~~PROPOSED~~] ORDER GRANTING *EX PARTE* APPLICATION FOR ENTRY OF TEMPORARY RESTRAINING ORDER AND ORDER RESTRAINING TRANSFER OF ASSETS TIED TO THE COUNTERFEITING OPERATION

By this instant Application (Docket No. 18), Plaintiff moves for entry of a preliminary injunction against Defendants for alleged violations of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a). The Court convened the hearing on August 12, 2011, at which only counsel for Plaintiff was present and available to present evidence supporting the Application for Preliminary Injunction (Docket No. 18). Defendants have not responded to the Application for Preliminary Injunction, nor made any filing in this case, nor have Defendants appeared in this matter either individually or through counsel. Based on the reasons discussed in greater detail below, the Court **GRANTS** Plaintiff's request.

## I. INTRODUCTION AND BACKGROUND

On July 29, 2011, the Court entered a temporary restraining order and order restraining transfer of assets tied to the counterfeiting operation on the following facts from Plaintiff's Complaint (Docket No. 1), Application for Preliminary Injunction (Docket No. 18), and supporting evidentiary submissions.

### A. FACTS

Plaintiff Chanel, Inc. ("Chanel") is the sole owner of six Chanel trademarks ("Subject Marks" or "Chanel Marks"), which are used in connection with the manufacture and distribution of, among other things, high quality handbags and wallets. (Sisbarro Decl. ¶¶ 4-5, Ex. A [Chanel Marks].) Chanel has been promoting the Subject Marks throughout the United States, and because it has spent substantial money on extensive advertising campaigns, the Chanel Marks have acquired fame in the consumer market. (Id. ¶¶ 6-7.)

Sometime prior to filing this action, Chanel learned that the defendants in this case—The Unincorporated Association d/b/a Luxevoute.com and Etuimaison.com, and Does 1-10 (collectively, "Defendants")—operate multiple fully interactive commercial websites where they allegedly promote, advertise, distribute, and sell, inter alia, handbags and wallets bearing counterfeit and

infringing trademarks, which are copies of one or more of the Subject Marks. (Id. ¶ 9.) In light of this discovery, Chanel retained Brittni Popp ("Popp"), a private investigator, to access one of Defendants' websites, luxevoute.com, and purchase a wallet bearing several of the Subject Marks at issue in this case. (Id. ¶¶ 10-11.)

On January 26, 2011, Popp placed an order for the purchase of a beige wallet bearing one or more of the Chanel Marks on luxevoute.com for a total purchase price of $475.00. (Popp Decl. ¶ 4, Ex. A [Beige Wallet on Website].) Popp finalized payment for the Chanel wallet by using an electronic check paid to the order of "T Conley." (Id. ¶ 5.) Thereafter, on February 12, 2011, Defendants informed Popp by email that the beige wallet was out of stock, and inquired whether a black Chanel branded wallet would be a suitable substitute. (Id. ¶ 8.) Popp replied to Defendants' message, and stated that the black wallet would be acceptable. (Id.) Following this exchange, Popp received a package containing the Chanel wallet that she ordered from the website. (Id. ¶ 10, Ex. G [Package].)

Following receipt of the package, Popp forwarded the wallet to Chanel's Director of Legal Administration, Adrienne Hahn Sisbarro ("Sisbarro"), who has been trained to identify the distinctions between genuine Chanel merchandise and counterfeit copies. (Sisbarro Decl. ¶¶ 3, 11.) After reviewing the wallet and the other purported Chanel products listed on Defendants' websites, luxevoute.com and etuimaison.com, Sisbarro determined that the products sold by Defendants were not genuine. (Id. ¶ 13.)

### B. Filing of this Action

On May 2, 2011, Chanel filed suit against Defendants alleging causes of action for trademark counterfeiting and infringement, and false designation of origin. (Docket No. 1, Compl. ¶¶ 31-44.) Thereafter, on July 15, 2011, Chanel filed: (1) an *Ex Parte* Application for Temporary Restraining Order ("TRO"); Order Restraining Transfer of Assets Tied to the Counterfeiting Operation; and Order to

BERRY & LUSSIER
A PROFESSIONAL CORPORATION

Show Cause Why a Preliminary Injunction Should Not Issue; and (2) an *Ex Parte* Application for Leave to Take Expedited Discovery. (Docket Nos. 5- 6.) The Court denied these applications, without prejudice, because of Chanel's unexplained delay in moving for a TRO. (Docket No. 13, 7/18/11 Order.) In its order, the Court cautioned Chanel that if it intended to re-file its request for a TRO, it would need to "include an explanation for the as yet unexplained delay in seeking expedited injunctive relief." (Id. at 2.) On July 26, 2011, Chanel re-filed: (1) an *Ex Parte* Application for Temporary Restraining Order ("TRO"); Order Restraining Transfer of Assets Tied to the Counterfeiting Operation; and Order to Show Cause Why a Preliminary Injunction Should Not Issue; and (2) an Ex Parte Application for Leave to Take Expedited Discovery. (Docket Nos. 18-19.)

On July 29, 2011 the Court entered an Order granting Plaintiff's *Ex Parte* Applications for a Temporary Restraining Order and Leave to Take Expedited Discovery and temporarily restrained Defendants from infringing the Chanel Marks at issue and further restrained certain assets tied to the counterfeiting operation. (Docket No. 24.) Additionally, on July 29, 2011, the Court entered an Order to Show Cause Why a Preliminary Injunction Should Not Issue, setting the Show Cause Hearing for August 11, 2011, at 1:30 p.m. (Docket No. 26.) The Court entered an Amended Order to Show Cause Why a Preliminary Injunction Should Not Issue on July 29, 2011, re-setting the Show Cause Hearing for August 12, 2011, at 1:30 p.m. (Docket No. 27.)

Plaintiff properly served Defendants with a copy of its *Ex Parte* Application for Temporary Restraining Order; Order Restraining Transfer of Assets Tied to the Counterfeiting Operation; and Order to Show Cause Why a Preliminary Injunction Should Not Issue and supporting papers; the Court's July 29, 2011 Order Re: *Ex Parte* Applications For a Temporary Restraining Order and Leave to Take Expedited Discovery; the Court's July 29, 2011 Order to Show Cause Why a

Preliminary Injunction Should Not Issue; the Court's July 29, 2011 Amended Order to Show Cause Why a Preliminary Injunction Should Not Issue; the Court's July 29, 2011 Order Granting *Ex Parte* Application For Entry of Temporary Restraining Order and Order Restraining Transfer of Assets Tied To The Counterfeiting Operation; the Summons and Complaint, and all filings in this matter, on Defendants via their known e-mail addresses, specifically support@luxevoute.com and enquiry@luxevoute.com. Thereafter, proofs of Service were filed confirming service on Defendants via e-mail. (Docket Nos. 30 and 31.)

## II. CONCLUSIONS OF LAW

### A. REQUEST FOR A PRELIMINARY INJUNCTION

The standard for a preliminary injunction is identical to the standard for a TRO. Frontline Med. Assocs., Inc. v. Coventry Healthcare Workers Comp., Inc., 620 F. Supp. 2d 1109, 1110 (C.D. Cal. 2009) (citing Lockheed Missile & Space Co. v. Hughes Aircraft Co., 887 F. Supp. 1320, 1323 (N.D. Cal. 1995)). A plaintiff seeking preliminary relief must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the publicinterest." Doe v. Reed, 586 F.3d 671, 676 (9th Cir. 2009) (quoting Winter v. Natural Res. Def. Council, Inc., 129 S. Ct. 365, 374 (2008)).

#### 1. LIKELIHOOD OF SUCCESS ON THE MERITS

The essential elements of Chanel's claims for trademark infringement and false designation of origin are identical. See Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp., 174 F.3d 1036, 1047 n.8 (9th Cir. 1999). To prevail on its trademark infringement claim under the Lanham Act, Chanel must show that, without its consent, Defendants "use[d] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in

- 5 -

connection with which such use is likely to cause confusion, or to cause mistake, or to deceive. ..." 15 U.S.C. § 1114(1)(a). Thus, Chanel must establish (1) that it owns valid federal trademarks for the Subject Marks; (2) that Defendants used the Chanel Marks when selling certain goods or offering them for sale; and (3) that there is a likelihood that consumers will be confused by the similarity between Chanel's and Defendants' goods.

As a threshold matter, the Court must determine whether Chanel has a valid trademark interest in the Subject Marks. Circuit law teaches that registration of a mark constitutes prima facie evidence of the validity of the registered mark and of the plaintiff's exclusive right to use it. See Brookfield Commc'ns, Inc., 174 F.3d at 1047. Here, Chanel's trademark registrations adequately establish their ownership of the Subject Marks. (Sisbarro Decl., Ex. A [Chanel Marks].) Next, the Court also finds that Chanel has introduced sufficient evidence that, at the very least, shows a likelihood that Defendants used the Subject Marks when selling or offering for sale handbags and wallets on their websites. (Id. ¶¶ 9-13); (Popp Decl. ¶¶ 4-10, Ex. A [Beige Wallet on Website]); (Gaffigan Decl., Ex. A [Handbags and Wallets on Defendants' Websites]).

Further, Circuit law teaches that the "critical determination" in a trademark infringement claim is "whether [the] alleged trademark infringer's use of [the] mark creates a likelihood that the consuming public will be confused as to who makes what product." Jada Toys, Inc. v. Mattel, Inc., 518 F.3d 628, 632 (9th Cir. 2008) (quotations and citations omitted). Where one produces counterfeit goods "in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of a likelihood of confusion." Polo Fashions, Inc. v. Craftex, Inc., 816 F.2d 145, 148 (4th Cir. 1987); see also Transgo, Inc. v. AJAC Transmission Parts Inc., 768 F.2d 1001, 1016 (9th Cir. 1985). "Likelihood of confusion is a factual determination normally made using an eight factor test."

Phillip Morris USA, Inc. v. Shalabi, 352 F. Supp. 2d 1067, 1073 (C.D. Cal. 2004) (citing Accuride Int'l Inc. v. Accuride Corp., 871 F.2d 1531, 1534 (9th Cir. 1989)). "However, 'in cases involving counterfeit marks, it is unnecessary to perform the step-by-step examination . . . because counterfeit marks are inherently confusing.'" Phillip Morris USA, Inc., 352 F. Supp. 2d at 1073 (citing Philip Morris USA Inc. v. Felizardo, 2004 WL 1375277, at *18 (S.D.N.Y. June 18, 2004)). The Lanham Act defines "counterfeit" as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127.

Here, as indicated more fully above, Chanel has introduced evidence that Defendants are offering and selling counterfeit goods bearing the Subject Marks, which are neither made by nor endorsed by Chanel. (Sisbarro Decl. ¶¶ 3, 9, 11, 13); (Popp Decl. ¶¶ 4-10, Ex. A [Beige Wallet on Website]); (Gaffigan Decl., Ex. A [Handbags and Wallets on Defendants' Websites]). Indeed, the Defendants' reproduction of the Subject Marks are virtually indistinguishable from the Chanel Marks registered by Chanel. (Compare Popp Decl., Ex. G [Package], with, Sisbarro Decl., Ex. A [Chanel Marks].) Thus, the Court finds that Chanel has adequately demonstrated that the goods are counterfeit and that Defendants' infringement creates a likelihood of confusion.

In sum, based on the foregoing discussion, the Court finds that for the purposes of this preliminary injunction, Chanel has sufficiently demonstrated a likelihood of success on the merits in the present action.

### 2. IRREPARABLE HARM

The Court also finds that Chanel is likely to suffer irreparable harm unless injunctive relief is granted. Circuit law teaches that "irreparable injury may be presumed from a showing of likelihood of success on the merits of a trademark infringement claim." Brookfield Commc'ns, Inc., 174 F.3d at 1066 (citation omitted). Here, because Chanel has adequately proven a likelihood of success on

the merits, irreparable injury is presumed in this case. Id. However, in addition to this presumption, without injunctive relief in the present action, Defendants will continue to dilute the Subject Marks through their counterfeiting activities, and unless their assets are frozen, it is possible that they could transfer or conceal the funds in their bank account—making any judgment recovered by Chanel in this case uncollectible. Further, unless the Court requires Defendants to preserve copies of all their computer files relating to the domain names luxevoute.com and etuimaison.com, there is certainly a possibility that pertinent evidence relating to this case could be destroyed.

### 3. BALANCE OF EQUITIES AND PUBLIC INTEREST

The Court also finds that the balance of equities weigh in Chanel's favor and granting injunctive relief in this case is in the public interest. Chanel has expended substantial money promoting the Subject Marks and has built substantial consumer good will. (Sisbarro Decl. ¶¶ 6-7.) Defendants, on the other hand, have attempted to capitalize on these efforts without authorization or payment. (Id. ¶ 9.) An injunction preventing Defendants from continuing their infringing activities and preserving copies of their computer files would not harm Defendants because it would not disrupt any lawful business, but would instead only prevent future unlawful conduct. Moreover, while Defendants could be harmed if their assets remain frozen, when weighing this harm against the counterfeiting activities that have significantly harmed Chanel, the balance of equities tips in Chanel's favor. Lastly, injunctive relief would advance the public interest by preventing further consumer deception or confusion due to Defendants' infringing products entering the marketplace

Therefore, it is hereby:

**ORDERED AND ADJUDGED** that:

1. Plaintiff's Application for Entry of a Preliminary Injunction is **GRANTED.**

2. A Preliminary Injunction is hereby entered against Defendants as follows:

    a. Defendants, their officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with Defendants having notice of this Order are hereby restrained and enjoined, pending termination of this action:

        i. From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing the Chanel Marks, or any confusingly similar trademarks, other than those actually manufactured or distributed by Plaintiff; and

        ii. From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products, not manufactured or distributed by Plaintiff, bearing the Chanel Marks, or any confusingly similar trademarks; or (ii) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing the Chanel Marks, or any confusingly similar trademarks.

    b. Defendants, their officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with Defendants having notice of this Order shall, until the conclusion of this action, discontinue the use of the Chanel Marks or any confusingly similar trademarks, on or in connection with all Internet websites owned and operated, or controlled by them including the Internet websites operating under the domain names, luxevoute.com and etuimaison.com;

- 9 -

[PROPOSED] ORDER GRANTING *EX PARTE* APPLICATION FOR ENTRY OF TEMPORARY RESTRAINING ORDER AND ORDER RESTRAINING TRANSFER OF ASSETS TIED TO THE COUNTERFEITING OPERATION

    c. Defendants, their officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with Defendants having notice of this Order shall, until the conclusion of this action, discontinue the use of the Chanel Marks, or any confusingly similar trademarks within domain name extensions, metatags or other markers within website source code, from use on any webpage (including as the title of any web page), any advertising links to other websites, from search engines' databases or cache memory, and any other form of use of such terms which is visible to a computer user or serves to direct computer searches to websites registered by, owned, or operated by Defendants, including the Internet websites operating under the Subject Domain Names;

    d. Defendants shall not transfer ownership of the Subject Domain Names during the pendency of this Action, or until further Order of the Court;

    e. Upon receipt of notice of this Order, JPMorgan Chase & Co. ("JPMorgan") and its related companies and affiliates shall immediately freeze and/or continue to freeze all JPMorgan accounts related to the JPMorgan account with the account number identified as * *******4074,[1] in which an electronic check was manually signed by "T Conley," depositing funds into the same on or about January 27, 2011, and any other related accounts of the same customer;

---

[1] The full account number has been redacted to avoid disclosure of private financial information, in compliance with L.R. 79-5.4(d); however, the full account number is identified on Plaintiff's Notice of Filing Reference List, filed under seal, which shall be disclosed to JPMorgan to effectuate the relief ordered herein.

[PROPOSED] ORDER GRANTING *EX PARTE* APPLICATION FOR ENTRY OF TEMPORARY RESTRAINING ORDER AND ORDER RESTRAINING TRANSFER OF ASSETS TIED TO THE COUNTERFEITING OPERATION

  f. JPMorgan shall further, to the extent it is not already done, immediately provide Plaintiff's counsel with all data which identifies the JPMorgan accounts frozen as well as an accounting of the funds in the frozen accounts;

  g. Defendants shall continue to preserve copies of all their computer files relating to the use of any of the domain names, luxevoute.com and etuimaison.com and shall continue to take all steps necessary to retrieve and preserve computer files relating to the use of the domain names luxevoute.com and etuimaison.com, and that may have been deleted before the entry of this Order.

3. Plaintiff shall maintain its bond in the amount of Ten Thousand Dollars and Zero Cents ($10,000.00), as payment of damages to which Defendants may be entitled for a wrongful injunction or restraint, during the pendency of this action, or until further Order of the Court.

4. This Preliminary Injunction shall remain in effect during the pendency of this action, or until such further date as set by the Court or stipulated to by the parties.

5. Plaintiff shall serve a copy of this Order on Defendants via their known e-mail addresses, specifically support@luxevoute.com and enquiry@luxevoute.com.

IT IS SO ORDERED

DATED: 8/15/11

GARY A. FEESS
UNITED STATES DISTRICT JUDGE

- 11 -

[PROPOSED] ORDER GRANTING *EX PARTE* APPLICATION FOR ENTRY OF TEMPORARY RESTRAINING ORDER AND ORDER RESTRAINING TRANSFER OF ASSETS TIED TO THE COUNTERFEITING OPERATION